[No. 10437–3–I.  Division One.  January 17, 1983.]

THE STATE OF WASHINGTON, *Respondent,* v. FRANK R. HOLBROOK, JR., *Appellant.*

*Zsa Zsa DePaolo* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Andrew Hamilton, Deputy,* for respondent.

SWANSON, J.—Franklin Rayle Coffin Holbrook, Jr., appeals from a judgment and sentence for violating the Uniform Controlled Substances Act. Holbrook's appeal questions the justification for the police officers' search of his vehicle which produced the drugs involved in his prosecution. We affirm.

Following a suppression hearing, the trial court found that at approximately 10 p.m., a Bellevue police officer stopped Holbrook and a passenger because Holbrook's vehicle had a broken taillight and an expired license plate. The officer informed his radio dispatcher that he had made a traffic stop and gave the description and license plate number of the vehicle. Another officer heard the transmission and recognized the vehicle from information on a "hot-sheet" obtained from an informant which stated that drugs and an automatic pistol were carried under the left side of the dashboard of Holbrook's vehicle. The officer drove to the scene of the traffic stop and relayed the infor-

mation. Holbrook was directed to step out of the vehicle and was frisked. A search was then conducted of the dashboard area of the vehicle where the "hot–sheet" indicated the gun would be located. After initially finding drugs, the officer continued to search for a weapon but was unsuccessful.

Based upon these facts, the trial court denied Holbrook's motion to suppress and found Holbrook guilty of violating the Uniform Controlled Substances Act.

Holbrook initially contends that the officers were not justified in conducting a protective search of the vehicle. We disagree. In *State v. Sieler,* 95 Wn.2d 43, 46–47, 621 P.2d 1272 (1980), the court stated:

> Although probable cause is lacking, police may briefly detain and question an individual if they have a well founded suspicion based on objective facts that he is connected to actual or potential criminal activity. An informant's tip cannot constitutionally provide police with such a suspicion unless it possesses sufficient "indicia of reliability."

(Citations omitted.) In *State v. Sieler, supra,* the court was concerned with whether the officer possessed sufficient information to stop an individual, not whether the officer may conduct a protective search after a valid stop.

█ Here, the stop of his automobile was properly based on a traffic violation. The protective search was based upon a police "hot–sheet" which contained Holbrook's name, description and picture, and the make and license number of his vehicle. The "hot–sheet" also stated:

> *Info:* Is dealing heavily in drugs including heroin, in the area of the Belle Lane Bowl.
> Keeps his drugs underneath the left side of his dash.
> Also supposedly has a loaded 25 auto under his dash which is stolen. Also supposedly has two more guns at home.

Although the officer may not have been justified in stopping Holbrook solely on the basis of the "hot–sheet" information because there was no evidence of the informant's reliability, a different question is raised as to whether the

officer was justified in conducting a protective search following a valid traffic stop. *See* 3 W. LaFave, *Search and Seizure* § 9.4 (1978).

In *Collett v. State,* 167 Ind. App. 185, 194–95, 338 N.E.2d 286, 292 (1975), the court held:

> When the investigatory stop itself is based on information supplied by another person, rather than on the officer's personal observation, the information must carry some indicia of reliability to justify the initial stop. *However, when an officer has made a reasonable investigatory stop and realizes that he has information that the individual carries a gun, the officer has a right to neutralize the threat of physical harm to himself and others during the investigative stop by patting the individual down for weapons—regardless of whether his information that the individual carries a gun has been verified or came from a "reliable" informant.*

(Citations omitted. Italics ours.) We find this reasoning persuasive. Information from an informant which is insufficient to justify a stop may, depending upon the circumstances, be sufficient to justify a protective search without a showing of its reliability.

In upholding the protective search, the trial court stated in its oral opinion:

> When [the officer] arrived, . . . he would be guilty of police misconduct if he didn't go forward and check out that car with one defendant on the outside and one officer and a passenger on the inside of the car. In view of the fact that we all know the percentage of officers who are shot approaching cars, it would seem to me that it was a typical case where the officers would not be doing their duty or protecting each other if they didn't go forward after saying, "Do you have a gun?"

In considering the fact that this stop was made at night, Holbrook had a passenger in the car, and the officer had information indicating there might be a gun in the car, even though obtained from a source whose reliability had not been established, any reasonably prudent person in the shoes of the officer would have believed that, for his own protection and the safety of his colleague, a protective

696

search should be conducted.

Holbrook also contends that the officer exceeded the permissible scope of a protective search because the patdown which occurred after he had exited from his vehicle was sufficient to dispel any risk of harm to the officers. Holbrook also contends that the officer conducted a search for the discovery of drugs under the pretext of a protective search. We reject these contentions.

█ The record shows that the search was clearly limited to the discovery of a possible concealed weapon because the officer restricted his search to the area under the left side of the dashboard. The officer shined his flashlight under the dashboard and after initially observing the plastic bag containing the drugs, continued to search by reaching under the dashboard. Although the officer was aware that drugs might also be concealed in the same area as the weapon, he testified that he discovered the drugs while looking for a gun. The scope of the search was limited to the discovery of weapons. *See State v. Loewen,* 97 Wn.2d 562, 647 P.2d 489 (1982).

WILLIAMS and CALLOW, JJ., concur.

Reconsideration denied February 22, 1983.

Review denied by Supreme Court June 23, 1983.