Maria DEL CARMEN
MORENO, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–89–230–CR.

Court of Appeals of Texas,
Corpus Christi.

Aug. 31, 1990.

Carlos Morin, Kingsville, for appellant.

Grant Jones, Dist. Atty., Corpus Christi, and David Jordan, Kingsville, for appellee.

Before NYE, C.J., and SEERDEN and BENAVIDES, JJ.

## OPINION

NYE, Chief Justice.

A jury found appellant, Maria del Carmen Moreno, guilty of the offense of possession of less than twenty-eight grams of a controlled substance, namely heroin. *See* Tex. Health & Safety Code Ann. §§ 481.-102, 481.115 (Vernon 1990). The trial court assessed punishment at seventeen years' confinement in the Texas Department of Corrections. By her sole point of error, appellant asserts that the trial court erred by denying her motion to suppress the evidence obtained from an illegal detention and unlawful search of her person. We reverse the judgment of the trial court and remand the cause for proceedings consistent with this opinion.

The trial judge, in a hearing on motion to suppress the evidence, acts as the trier of fact and must determine the credibility of the witnesses and the weight to be given to the testimony. *Kelly v. State,* 669 S.W.2d 720, 726 (Tex.Crim.App.1984), *cert. denied,* 469 U.S. 963, 105 S.Ct. 362, 83 L.Ed.2d 298

(1984); *Hoag v. State*, 791 S.W.2d 342 (Tex. App.—Corpus Christi 1990, n.w.h.) (not yet reported); *Fast v. State*, 755 S.W.2d 515, 517 (Tex.App.—Houston [14th Dist] 1988, pet. ref'd). We will not disturb a trial court's ruling on a motion to suppress if the evidence supports it. *Alaniz v. State*, 647 S.W.2d 310, 314 (Tex.App.—Corpus Christi 1982, pet. ref'd).

At the hearing on the motion to suppress, the following evidence was adduced from the sole witness, Detective Ted Rosales. On the evening of March 14, 1989, Rosales of the Kingsville Police Department was on routine city patrol in an unmarked police unit when he heard the dispatcher send several patrol units to a local address. The dispatcher informed the units that an unknown male had reported that three men in a blue pickup were beating a woman and identified the victim as Carmen Moreno (appellant). Rosales responded to the dispatcher's broadcast.

Rosales testified that he approached from the alley behind the house where the alleged assault was taking place. As he drove his patrol unit into the alley, he observed Moreno running away from the house and towards the alley where he was located. He stated that she was running away from an officer located at the front of the house who had arrived at the scene moments earlier. He noted that Moreno's facial expression could be characterized as a smirk, rather than fear or anguish, and that she was looking over her shoulder at a second police unit which had stopped behind her. Moreno ran towards a garage located behind a neighboring house and disappeared into the structure. Rosales alighted from the patrol car and proceeded towards the garage, following Moreno. As he did so he noticed, through an opening at the rear of the garage, a third police unit approaching the scene from behind the garage. At that time, Moreno exited the garage, away from the arriving unit, walking to meet Rosales.

Moreno greeted Rosales saying, "Que onda?" (What's going on?). Rosales asked Moreno to explain the situation and noted that Moreno appeared nervous and shaken. He also noted that Moreno did not appear to be the victim of any physical assault, as her clothing and hair were not torn or in disarray.

Rosales knew Moreno to be a drug user and that she had a reputation for fighting police officers. Because he had at least one previous encounter with appellant while in the performance of his official duties, he decided that he would search her for weapons before investigating the situation because he feared for his safety and that of the other officers. He instructed Moreno to place her hands on a car in the driveway and to stand with her feet apart for a pat-down search. She complied without any resistance. Rosales handed Moreno's purse to Officer Mario Munoz, one of the officers dispatched to the scene and instructed Munoz to search the bag for weapons.

Rosales searched appellant's left side without incident, but she turned away from him as he positioned himself to pat-down the right side of her body. He saw her quickly retrieve an object from a right-side pants pocket. Rosales grabbed Moreno's right hand saying, "She's got it in her right hand." Munoz and Rosales struggled with Moreno, trying to open her clenched fist. At that time, Officer Ricardo Torres arrived to help subdue the struggling Moreno and retrieve the object in her hand.

The officers noticed a folded square of tin foil on the ground after the struggle, and discovered that Moreno held a matchbox which, because of the struggle, was so crumpled and misshapen that its contents could be observed. The box contained several folded pieces of aluminum foil, similar to the one found on the ground; each foil piece held a brown powdery substance. This powder was later identified as heroin. The officers then arrested Moreno on suspicion of possession of illegal drugs. Officer Munoz reexamined the purse contents, finding a zipper bag with a syringe, a bottle cap with some aluminum foil inside (known to drug users as a "cooker"), and an unwrapped cigarette filter.

■ When a police officer observes unusual conduct which leads him reasonably

to conclude in light of his experience that criminal activity may be afoot and *that the person with whom he is dealing may be armed and presently dangerous*, when in the course of investigating this behavior he identifies himself as a police officer and makes reasonable inquiries, and when nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or other's safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such person in an attempt to discover weapons which might be used to assault him. *Ybarra v. Illinois*, 444 U.S. 85, 92–93, 100 S.Ct. 338, 342–43, 62 L.Ed.2d 238 (1979); *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972); *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884–85, 20 L.Ed.2d 889 (1968); *see also Voelkel v. State*, 717 S.W.2d 314, 316 (Tex.Crim.App.1986).

In *Lippert v. State*, 664 S.W.2d 712, 719 (Tex.Crim.App.1984), the defendant was a nonoccupant who entered a friend's house during the execution of a search warrant and was subsequently searched for weapons. The Court of Criminal Appeals determined that the stop and frisk for weapons to which the police subjected the defendant was constitutionally impermissible because the police officer was unable to point to particular facts from which he could reasonably infer that the individual was armed and presently dangerous. The court pointed to several criteria which it used to reach its decision, such as: (a) the defendant did not flee the house upon encountering the police executing the warrant, (b) he made no furtive gestures or sudden movements towards a pocket or other place where a weapon might be concealed, (c) he made no threats and did not attempt to resist detention, (d) he was not shown to be committing or about to commit any criminal offense nor was he shown to be under the influence of alcoholic beverages or drugs, (e) the police did not know if defendant had any prior criminal record and, (f) the police did not have any other reasonable suspicion that defendant was armed and dangerous.

■ ■ In the present case, the unidentified person who notified the police of the disturbance specifically identified Moreno as the *victim* of an alleged assault. The dispatcher did not indicate the reason for the assault or that appellant was armed. Although the dispatcher gave sufficient information for the officers to justify an investigative stop and, upon further information, possibly arrest the three alleged assailants, there was no information regarding Moreno which would authorize Rosales, upon his immediate arrival, to stop her or to frisk her for weapons. A person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person. *Sibron v. New York*, 392 U.S. 40, 62, 88 S.Ct. 1889, 1902, 20 L.Ed.2d 917 (1968).

The undisputed facts show: Rosales saw Moreno running away from the address where she was allegedly being assaulted, and away from police officers who were arriving to investigate the reported disturbance and to come to her aid. She was nervous and shaking when she later greeted him. Moreno's facial expression was not that of one anxious to protect her well-being and her clothing and hair were not in disarray, which would be consistent with the attitude and appearance Rosales expected of an assault victim. Moreno did not even mention to Rosales that she had been assaulted. Rosales knew that Moreno used narcotics and that she was violent with the police. These factors support the reasonable inference that there was no assault, that there might be some other unascertained criminal activity afoot, and that Moreno was a dangerous person to police officers.

There was no evidence at the hearing that Moreno might be carrying a weapon. *See State v. Holbrook*, 33 Wash.App. 692, 657 P.2d 797 (1983) (awareness that the suspect had been previously armed); *People v. Allen*, 50 Cal.App.3d 896, 123 Cal. Rptr. 80 (1975) (characteristic bulge in suspect's clothing indicating weapon); *Commonwealth v. Wascom*, 236 Pa.Super. 157, 344 A.2d 630 (1975) (observation of an object in a suspect's pocket indicating possi-

bility of a weapon). The information available to Rosales upon arriving and greeting Moreno had no basis to support a reasonable belief that she was armed. She made no furtive gestures upon greeting Rosales. There was no evidence that she used a weapon in previous encounters or regarding the reason for her previous violence with the police.

When Rosales decided to search Moreno for weapons, the requirements mandated in *Terry* for a legal search were not met. A police officer is not entitled to search every person whom he sees or of whom he makes inquiries. Before he places a hand on the person of a citizen in search of anything, he must have constitutionally adequate, reasonable grounds for doing so. In the case of a search for weapons, he must be able to point to a particular fact or facts from which he reasonably infers that the individual was armed and presently dangerous. *Terry v. Ohio, supra.* The search here was not justified from its inception. Any fruits of that search must be suppressed in accordance with the Fourth Amendment of the United States Constitution.

The trial court erred in denying Moreno's motion to suppress the evidence obtained in the unauthorized search of her person.

The judgment of the trial court is REVERSED and REMANDED.