[No. 26088-0-I.   Division One.   June 22, 1992.]

THE STATE OF WASHINGTON, *Respondent,* v. MICHAEL
FLOYD COLLINS, *Appellant.*

*Eric Broman* of *Washington Appellate Defender Associa-
tion,* for appellant.

158

*Norm Maleng, Prosecuting Attorney,* and *Brenda Bannon, Deputy,* for respondent.

PEKELIS, J. — Michael Floyd Collins appeals his conviction for possession of a controlled substance, contending that the trial court erred in denying his motion to suppress evidence which he asserts the police seized during an unlawful weapons search. We affirm.

I

On July 10, 1989, Seattle Police Officers Stephen E. Kaffer and Charles A. Farrell were patrolling the Capitol Hill area. At approximately 4 a.m., Officer Kaffer observed a 1969 green Pontiac with defective brake lights. Officer Kaffer activated his flashing lights, and the vehicle pulled over to the side of the street.

Officer Kaffer approached the driver's side of the vehicle, while Officer Farrell walked to the passenger's side. Officer Farrell used his flashlight to "light up the rear seat and the front seat and the floorboard underneath the driver to search for any weapons", but found none. Officer Kaffer saw nothing inside the vehicle to cause him to be suspicious.

When Officer Kaffer reached the driver's window, he immediately recognized the driver, Collins, "as someone that I had arrested on a felony warrant a couple months prior." Officer Kaffer could not recall precisely when the earlier arrest had occurred nor the basis of the felony warrant.

Officer Kaffer asked Collins, who was alone, to step out of the vehicle, and Collins did so. Officer Kaffer testified that Collins did not give him "a hard time" or make "threatening gestures of any kind".

Officer Kaffer then asked Collins to put his hands on the trunk of the vehicle and conducted a pat-down search for weapons. Officer Kaffer "felt a hard object in [Collins'] right rear pants pocket." Reasoning that the object might be a knife or some other type of a weapon, Officer Kaffer reached into Collins' pocket and pulled out a legal-sized pocket knife. As Officer Kaffer pulled the knife out of Collins' pocket, a

small plastic bag containing powder also fell out. Suspecting that the powder was a controlled substance, Officer Kaffer arrested Collins. The powder was later identified as methamphetamine.

Collins was charged by information with possession of a controlled substance in violation of the Uniform Controlled Substances Act, RCW 69.50.401(d). Collins brought a CrR 3.6 motion to suppress the methamphetamine as the product of an illegal search and seizure. At the suppression hearing, Officer Kaffer testified about the basis for his weapons search of Collins. Officer Kaffer stated that he was concerned about his safety because he remembered the circumstances surrounding his arrest of Collins approximately 2 months earlier. Officer Kaffer testified that in the previous arrest, he and his partner had stopped Collins early in the morning for riding his bicycle without a light. When Officer Kaffer checked Collins' identification, he discovered an outstanding felony warrant for which he arrested Collins. Before he was taken to the police station, Collins asked the officers to put his bicycle in the bed of his pickup truck, which was parked several blocks away. Officer Kaffer agreed to do so.

As the officers placed Collins' bicycle in the bed of his truck, Officer Kaffer noticed a holster, several rounds of ammunition, and a pair of handcuffs inside the cab of the truck. Officer Kaffer testified that he asked Collins if there was a gun inside the truck and that Collins told him there was not. Officer Kaffer also testified that he was "90 percent sure we even checked inside [the truck] at [Collins'] okay. But we didn't find a gun."

Officer Farrell also testified at the hearing. Officer Farrell testified that after Officer Kaffer approached Collins in his vehicle, he heard Officer Kaffer say, "Well, I remember you." According to Officer Farrell, Officer Kaffer then "pulled" Collins out of the vehicle

> [while] telling me that he had arrested [Collins] for something — I don't know, maybe a warrant — and he had bullets on him and, I believe, a holster. He didn't have a gun, but he had the bullets and a holster. So he was checking him for weapons.

After hearing the testimony of the arresting officers, the trial court denied Collins' motion to suppress. In its written findings and conclusions, the trial court found that due to the circumstances of Collins' previous arrest, Officer Kaffer "feared for his safety, believing there was a substantial possibility the defendant may be armed with a weapon and reasonably dangerous." The trial court concluded that "[g]iven the totality of the circumstances, Officer Kaffer held a reasonable and articuable [sic] suspicion that the defendant might be armed and presently dangerous."

After a stipulated trial, Collins was found guilty as charged. Collins appeals from the trial court's denial of his motion to suppress evidence.

## II

Collins' sole contention on appeal is that the trial court erred in determining that Officer Kaffer's weapons frisk was reasonable under the circumstances.

■ While the findings of a trial court following a suppression hearing are of great significance, the constitutional rights at issue require this court to undertake an independent evaluation of the record. *State v. Flowers*, 57 Wn. App. 636, 641, 789 P.2d 333 (citing *State v. Daugherty*, 94 Wn.2d 263, 269, 616 P.2d 649 (1980), *cert. denied*, 450 U.S. 958 (1981)), *review denied*, 115 Wn.2d 1009 (1990).

■ A police officer may conduct a limited weapons search during an investigatory stop in order to protect him or herself from physical harm. *Terry v. Ohio*, 392 U.S. 1, 30, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). However, a weapons search may be conducted only if the police officer reasonably believes the suspect to be armed and presently dangerous. *Terry*, 392 U.S. at 27; *State v. Hobart*, 94 Wn.2d 437, 446, 617 P.2d 429 (1980). A police officer's belief is reasonable if he or she can articulate particular facts from which a reasonable inference can be drawn that the suspect is armed and presently dangerous. *Sibron v. New York*, 392 U.S. 40, 64, 20 L. Ed. 2d 917, 88 S. Ct. 1889 (1968); *State v. Williams*, 102 Wn.2d 733, 739-40, 741, 689 P.2d 1065 (1984).

Our Supreme Court has stated that a police officer must articulate " '[a] founded suspicion" for the officer's belief that a suspect is armed and presently dangerous. *State v. Belieu*, 112 Wn.2d 587, 601-02, 773 P.2d 46 (1989) (quoting *Wilson v. Porter*, 361 F.2d 412, 415 (9th Cir. 1966)). If the officer is unable to articulate any *reasonable* basis for his or her belief that a suspect is armed and presently dangerous, then the search is unconstitutional. *See Belieu*, 112 Wn.2d at 601-02. Thus, even where an officer does articulate a basis for believing that a suspect is armed and dangerous, that is not in itself dispositive. The basis offered by the officer must be "reasonable", *i.e.*, relevant to the determination of whether the person is armed and dangerous. An offered basis which is discriminatory or so generalized as to be arbitrary is not relevant. Furthermore, even where the stated basis is facially "reasonable", the court must decide whether, under the totality of the circumstances, the stated reason is, in fact, pretextual and the search merely done for harassment or otherwise improperly motivated.

■ Here, Officer Kaffer gave only one reason for his belief that Collins was armed and presently dangerous. That reason was the fact that approximately 2 months earlier, in the course of arresting Collins for an outstanding felony warrant, Officer Kaffer observed several rounds of ammunition, a holster, and a pair of handcuffs in Collins' truck. In addition, after a consensual search of the truck, no gun was found.

Collins argues that these facts are insufficient to support a reasonable belief that he was armed and presently dangerous. In support of his contention, Collins relies on *State v. Hobart*, 94 Wn.2d 437, 617 P.2d 429 (1980). In *Hobart*, a police officer recognized a suspect as the person he had arrested 3 years earlier for carrying a concealed weapon in his car. *Hobart*, 94 Wn.2d at 439. Based on this fact, the officer approached the suspect, asked for identification, and searched him for weapons. *Hobart*, 94 Wn.2d at 439, 446. The officer found no weapons, but detected two spongy objects which were later identified as packets containing

cocaine. *Hobart*, 94 Wn.2d at 439-40. Our Supreme Court reversed the trial court's denial of the defendant's motion to suppress the packets of cocaine, holding that, in removing the "spongy objects", the officer's search had exceeded its proper scope. *Hobart*, 94 Wn.2d at 446-47. Although not necessary to its opinion, the court noted that the officer's basis for conducting the search "arguably . . . was not a sufficient reason to suppose that he was presently danger-ous". *Hobart*, 94 Wn.2d at 446.

However, we are not bound by dicta in *Hobart*. Moreover, the facts in the instant case are considerably stronger than those in *Hobart*. Officer Kaffer's stop of Collins' defective vehicle was legal. The stop occurred at 4 a.m. When Officer Kaffer approached Collins' vehicle, he immediately recog-nized Collins from his recent arrest on a felony warrant. In addition, Officer Kaffer immediately recalled the specific circumstances of the previous arrest, including the presence of a holster and several rounds of ammunition in the cab of Collins' truck and the fact that no gun had ever been located. All of this was corroborated by Officer Farrell.

We conclude that Officer Kaffer's stated reason for searching Collins constituted a reasonable basis for believ-ing that Collins was armed and presently dangerous. Col-lins does not contend, and we do not detect under the totality of the circumstances here, that there is even an inference that Officer Kaffer's articulated basis was pretex-tual, harassing or otherwise improper. Thus, Officer Kaffer's weapons search was reasonable and proper under the cir-cumstances.

Affirmed.

KENNEDY, J., concurs.

BAKER, J. (dissenting) — I respectfully dissent.

Appellant was stopped for a very minor traffic violation. Although there was no apparent reason to do so, the officer exercised his prerogative to require the appellant to exit his

vehicle. The appellant did so, in a very cooperative manner. There was nothing whatsoever suspicious about his conduct.

The officer then proceeded to search the appellant. At that point, there was no indication that the appellant was going to be taken into custody and transported. Therefore, there was no valid concern for officer safety related to custodial transportation. Nor did the nature of the traffic infraction for which the appellant was stopped provide any concern for officer safety. The only basis for the search was the officer's knowledge that appellant had previously been arrested on an unknown felony warrant, at which time the appellant had again been very cooperative, but was seen to have a holster and bullets in his truck, indicating probable possession of a handgun, although no such weapon was ever seen. There was no indication at this time or at the time of prior contact that the appellant illegally owned, illegally possessed or had illegally used a weapon.

Thus, the officer on this occasion was left with nothing more than a suspicion that the defendant at one time owned or had access to a weapon. Such generalized suspicion cannot possibly provide the necessary basis for a reasonable belief that the defendant was armed and presently dangerous on this occasion. *See State v. Smith*, 102 Wn.2d 449, 452, 688 P.2d 146 (1984); *State v. Sweet*, 44 Wn. App. 226, 233-34, 721 P.2d 560, *review denied*, 107 Wn.2d 1001 (1986).

The law does not, and in my opinion should not, allow the police to have carte blanche discretion to search a citizen whenever a valid police-citizen contact is in progress. If mere known or suspected ownership of a gun were sufficient cause to justify searching a detainee, there are areas of this state where a high percentage of the citizenry could be subjected to such searches any time a valid stop occurred — even, as in this case, if the stop is for a broken taillight. I am convinced that our focus must continue to be not upon possible ownership of a weapon, but upon other specific and articulable factors in the confrontation which reasonably lead to a concern that the detainee is presently armed and dangerous. Our fundamental right of privacy demands no

less. *Terry v. Ohio*, 392 U.S. 1, 21-22, 27, 20 L. Ed. 2d 889, 88 S. Ct. 1868, 1880, 1883 (1968).

I readily concede that the nature of the crime for which the person is being stopped — even on an investigatory basis — may provide the necessary support for a decision to perform a protective frisk for weapons. The stop that was involved in this case, however, is at the opposite end of that spectrum.

I would reverse, and therefore respectfully dissent.

Review granted at 120 Wn.2d 1006 (1992).