[No. 59512-7.   En Banc.   March 25, 1993.]

THE STATE OF WASHINGTON, *Respondent*, v. MICHAEL
FLOYD COLLINS, *Petitioner*.

*Eric Broman* of *Washington Appellate Defender Association*, for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *Brenda L. Bannon, Deputy,* for respondent.

*Richard B. Sanders* on behalf of Second Amendment Foundation, amicus curiae for petitioner.

BRACHTENBACH, J. — Defendant was convicted of a violation of the Uniform Controlled Substances Act (UCSA), RCW 69.50.401(d). Defendant assigns error to the trial court's denial of his motion to suppress evidence obtained from a protective frisk for weapons following a stop for a minor traffic infraction. The only issue in this case is whether the circumstances were sufficient to create the type of reasonable safety concern necessary to justify the protective frisk for weapons.

The Court of Appeals, with one judge dissenting, affirmed the trial court's ruling on defendant's motion to suppress. *State v. Collins,* 66 Wn. App. 157, 831 P.2d 767 (1992). We granted a petition for review. We affirm.

During the early morning of July 10, 1989, Officer Kaffer and his partner were patrolling the Capitol Hill area of

Seattle in a marked patrol car. At approximately 4 a.m., on East Pike Street, the officers stopped a 1969 green Pontiac after observing that the vehicle's brake lights failed to come on when the vehicle was stopped at a red traffic light. The driver of the vehicle was defendant Michael F. Collins, a 6-foot-3-inch-tall white male.

As soon as the vehicle was stopped, Officer Kaffer approached the driver's side of the vehicle. When he reached the driver's window, he immediately recognized defendant from an arrest on a felony warrant made approximately 2 months earlier. Although Officer Kaffer could not recall the exact date of the arrest or the exact nature of the warrant, he did recall the circumstances of his prior contact with defendant.

The prior contact occurred when defendant was stopped for riding a bicycle at night without a light. Following the stop, Officer Kaffer ran a routine check on defendant's identification, and was informed of an outstanding felony warrant for defendant. Defendant was then placed under arrest, and the officers agreed to defendant's request that his bike be placed in the bed of his truck three blocks away. When the officers carried out this request, they noticed "a large amount of either .38 or .357" ammunition, a holster, and a set of handcuffs in the passenger compartment of the truck. Clerk's Papers, at 12. Defendant told the officers that they would not find a gun in the truck, and the officers did not find a gun when they searched the truck's passenger compartment with defendant's permission.

Upon recognizing defendant and recalling these facts, Officer Kaffer ordered defendant out of the vehicle and conducted a brief, pat-down frisk of defendant's outer clothing to search for weapons. During the frisk, Officer Kaffer discovered a hard object in defendant's left rear pocket. Believing that the hard object could be a weapon, Officer Kaffer reached into the pocket and retrieved a knife with a 3-inch blade. As Officer Kaffer pulled out the knife, a plastic bag containing a powdery substance fell out of the pocket. Suspecting that the bag contained a controlled substance, Officer Kaffer placed defendant

under arrest for a violation of the UCSA. The contents of the bag tested positive for methamphetamine.

Defendant was charged with possession of methamphetamine, a controlled substance. Defendant, alleging that the frisk for weapons was in violation of his rights under the fourth amendment to the United States Constitution, moved to suppress the controlled substance found during that frisk. The trial court denied the motion to suppress and entered a judgment of guilty upon defendant's "stipulation to facts sufficient to enter a guilty finding."

■ Because the State argues that Officer Kaffer's warrantless frisk of defendant is within an exception to the Fourth Amendment's warrant requirement, the burden is on the State to show that the evidence supported the admission of the methamphetamine. *State v. Leach*, 113 Wn.2d 735, 738, 782 P.2d 1035 (1989). The exception relied on by the State is the one recognized in *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968), for what the Court there referred to as a "stop and frisk".

In *Terry*, the United States Supreme Court rejected the argument that the Fourth Amendment is inapplicable to a seizure of a person short of a custodial arrest and to an accompanying brief frisk of an individual's outer clothing to search for weapons. *Terry*, 392 U.S. at 16. However, the Court explained that such police action is subject only to the Fourth Amendment's requirement that searches and seizures not be unreasonable, not to the warrant and probable cause requirements. *Terry*, 392 U.S. at 20. *See State v. Hobart*, 94 Wn.2d 437, 441, 617 P.2d 429 (1980).

[W]e deal here with an entire rubric of police conduct — necessarily swift action predicated upon the on-the-spot observations of the officer on the beat — which historically has not been, and as a practical matter could not be, subjected to the warrant procedure. Instead, the conduct involved in this case must be tested by the Fourth Amendment's general proscription against unreasonable searches and seizures.

(Footnote omitted.) *Terry*, 392 U.S. at 20.

The Court explained that the lesser Fourth Amendment burden imposed in the protective frisk context is justified by

the strong government interest in police officer safety. *Terry,* 392 U.S. at 23.

> We are now concerned with more than the governmental interest in investigating crime; in addition, there is the more immediate interest of the police officer in taking steps to assure himself that the person with whom he is dealing is not armed with a weapon that could unexpectedly and fatally be used against him. Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties. American criminals have a long tradition of armed violence, and every year in this country many law enforcement officers are killed in the line of duty, and thousands more are wounded.

*Terry,* 392 U.S. at 23.

■ The Fourth Amendment will be satisfied where the following requirements are met: (1) the initial stop must be legitimate; (2) a reasonable safety concern must exist to justify a protective frisk for weapons; and (3) the scope of the frisk must be limited to the protective purpose. *Adams v. Williams,* 407 U.S. 143, 146, 32 L. Ed. 2d 612, 92 S. Ct. 1921 (1972). In this case, only the existence of a reasonable safety concern that would justify the protective frisk is at issue. In his petition for review, defendant does not challenge the validity of the original stop or the scope of the search.

■ A reasonable safety concern exists, and a protective frisk for weapons is justified, when an officer can point to "specific and articulable facts" which create an objectively reasonable belief that a suspect is "armed and presently dangerous." *Terry,* 392 U.S. at 21-24. As the Court in *Terry* further explained:

> The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent [person] in the circumstances would be warranted in the belief that his [or her] safety or that of others was in danger.

*Terry,* 392 U.S. at 27. This court recently phrased the principle thusly:

> [C]ourts are reluctant to substitute their judgment for that of police officers in the field. "A founded suspicion is all that is necessary, *some basis from which the court can determine that the [frisk] was not arbitrary or harassing.*"

(Footnote omitted.) *State v. Belieu*, 112 Wn.2d 587, 601-02, 773 P.2d 46 (1989) (quoting *Wilson v. Porter*, 361 F.2d 412, 415 (9th Cir. 1966)).

Applying the reasonable safety concern standard to the present case, the trial court's denial of defendant's suppression motion was proper if, under the circumstances surrounding Officer Kaffer's frisk of defendant, a reasonably careful police officer would have had a "founded suspicion" that his or her own safety or the safety of others was threatened. The circumstances which gave rise to Officer Kaffer's belief that a frisk was justified are: (1) the time of night at which Officer Kaffer's current stop of defendant occurred; (2) defendant's prior felony arrest; and (3) the presence of ammunition and a holster in a vehicle associated with the defendant at the time of the prior felony arrest. At the suppression hearing Officer Kaffer explained his reaction to these circumstances: "I didn't want to get shot, so I had him step out of the vehicle right away." Verbatim Report of Proceedings, at 12.

█ In ruling on defendant's suppression motion, the trial court concluded: "There was no abuse of police action, no harassment or misconduct. Given the totality of the circumstances, Officer Kaffer had a reasonable and articuable [*sic*] suspicion that the defendant might be armed and presently dangerous." Clerk's Papers, at 29. Although we must independently examine the circumstances surrounding the frisk, because of the constitutional right at issue, conclusions entered by a trial court following a suppression hearing carry great significance for a reviewing court. *State v. Daugherty*, 94 Wn.2d 263, 269, 616 P.2d 649 (1980), *cert. denied*, 450 U.S. 958 (1981). In this case, we agree with the trial court that the circumstances were sufficient to support a reasonable belief that the defendant posed a threat to the safety of Officer Kaffer or to the safety of his partner.

█ The first fact we must evaluate is the timing of the stop. This fact may not be relevant in all cases, but it is significant here because the stop occurred in the early morning when it was still dark. The darkness made it more dif-

ficult for Officer Kaffer to get a clear view into the car defendant was driving. Thus, it would have been more difficult for Officer Kaffer to observe defendant's movements. In addition, the darkness made it more difficult for Officer Kaffer to view the surrounding area and to ascertain whether other persons, who could come to defendant's aid, or interfere with the activity, were in the area. Furthermore, an individual who has been stopped may be more willing to commit violence against a police officer at a time when few people are likely to be present to witness it. These dangers are proper considerations for a reasonably careful police officer forced to make a quick decision as to the appropriate course of action to take to preserve his or her safety and the safety of others.

As to the second fact, defendant's prior felony arrest, defendant argues that it was not a proper consideration because Officer Kaffer had no recollection of the nature of the felony. Defendant argues that many nonviolent crimes, such as welfare fraud or forgery, are felonies and that it is, therefore, improper to presume present dangerousness from a prior unidentified felony arrest. The first defect in defendant's argument is the failure to focus on the narrow issue involved in this case. This case involves only the use of a prior felony arrest as a factor to justify a frisk *after* a valid stop has occurred, *not as a factor to justify the stop*. The authority relied on by defendant does not address this narrow issue. *See State v. Hobart, supra* at 446-47 (dicta indicating that use of a prior arrest to justify a stop might be improper); *State v. Sterling*, 43 Wn. App. 846, 851, 719 P.2d 1357 (indicating that consideration of a prior arrest by a magistrate reviewing a request for a warrant is proper), *review denied*, 106 Wn.2d 1017 (1986).

The second defect in defendant's argument is the failure to recognize that the prior felony arrest was only *one factor* considered by Officer Kaffer. Therefore, the question in this case is not whether the prior felony arrest, alone, was enough to establish that defendant was presently dangerous. Rather, the question is whether, given the other circumstances in this

case, the additional fact of an unidentified prior felony arrest would make a reasonably careful officer more concerned for his or her safety or the safety of others.

In answering this question, we reject the notion that an officer must have an accurate memory catalog of the exact nature of all previous felony arrests when making an instantaneous decision in the streets. Instead, we hold it is sufficient that Officer Kaffer accurately recalled an arrest for a crime serious enough to be a felony. It is not necessary that an officer take time to sort out the elements of each felony in circumstances where a quick decision is called for to preserve the safety of the officer and others.

■ The third fact relied on by Officer Kaffer was the presence of the ammunition and holster in a vehicle associated with the defendant at the time of the prior felony arrest. This fact could reasonably have been understood by Officer Kaffer as indicating that defendant might have access to a gun that would fit the holster and use the ammunition. *Cf. State v. Wright*, 104 Nev. 521, 523, 763 P.2d 49 (1988) (holding that "[t]he presence of a bullet could reasonably indicate the presence of a gun"). Before considering the significance of this fact, we again emphasize that the question here is not whether this fact would justify a stop. Rather, the question in this case, where the validity of the stop is unchallenged, is whether the fact of apparent prior access to a weapon would make a reasonably careful officer more likely to believe that his or her safety or the safety of others is threatened.

We have not previously considered this issue. The issue of whether a prior arrest for carrying a concealed weapon would support a frisk was raised in one previous case, but that case was decided on other grounds. *State v. Hobart, supra* at 446 (holding that the frisk was unconstitutional because the scope was not properly limited).

The Court of Appeals has considered a related issue, whether an informant's tip that an individual carries a gun can support a protective frisk following a traffic stop where the reliability of the informant has not been established.

*State v. Holbrook*, 33 Wn. App. 692, 657 P.2d 797, *review denied*, 99 Wn.2d 1023 (1983). Initially, the court pointed out that the issue was the validity of the frisk, not the validity of the stop. *Holbrook*, 33 Wn. App. at 694-95. The court also made clear that the informant's tip was not the only fact offered to justify the frisk. *Holbrook*, 33 Wn. App. at 695. The stop occurred at night, and there was a passenger in the car. After considering these additional facts, the court held that even where the reliability of the information has not been established, a reasonable officer in possession of information that the individual stopped might have a gun "would have believed that, for his own protection and the safety of his colleague, a protective search should be conducted." *Holbrook*, 33 Wn. App. at 695-96.

The Court of Appeals properly recognized the significant impact information that an individual stopped might have a gun would have on a reasonably careful officer's assessment of the dangers involved in a stop. We hold that, when combined with other circumstances that contribute to a reasonable safety concern, such information could lead a reasonably careful officer to believe that a protective frisk should be conducted to protect his or her own safety and the safety of others. However, because of the facts in this case, we limit our holding to circumstances where the information the officer possesses is reliable. In doing so we express no opinion on the portion of *Holbrook* which holds that an officer may rely on the tip of an informant whose reliability has not been established in justifying a frisk. In our case, there is no question as to the reliability of Officer Kaffer's information because it was based on his personal observation.

In this case, the reliable fact of apparent prior access combined with the fact that the stop occurred at 4 a.m. and the fact of defendant's prior felony arrest gave Officer Kaffer objectively reasonable grounds to be concerned for his personal safety and the safety of others, including his partner. Therefore, Officer Kaffer's frisk of the defendant did not violate the Fourth Amendment, and the trial court properly denied defendant's suppression motion.

There is one final matter raised by defendant. Defendant argues that allowing a protective frisk to be justified by the fact of his prior possession of ammunition and a holster impermissibly burdens his right to bear arms. The State argues that this issue was not properly presented for review by this court because defendant did not raise this argument before the trial court or before the Court of Appeals, and because this argument was not stated as an issue in either his petition for review or in his supplemental brief filed in this court.

■ RAP 13.7(b) limits the issues to be reviewed by this court to those "raised in . . . the petition for review and the answer". An exception exists where "the Supreme Court orders otherwise upon the granting of the . . . petition", RAP 13.7(b), but we did not so order in this case. The proper method for raising an issue in a petition for review is described in RAP 13.4(c)(5), which provides that the petition for review must contain "[a] concise statement of the issues presented for review." This court has required that the petition for review state the issues with specificity. *Clam Shacks of Am., Inc. v. Skagit Cy.*, 109 Wn.2d 91, 98, 743 P.2d 265 (1987).

> In Clam Shacks' reply to the response to the petition for review it contends that it requested review of the entire Court of Appeals opinion. That is not how an issue is raised on review. RAP 13.4(c)(5) requires a concise statement of the issues presented for review; RAP 13.7(b) limits review to only the questions raised in the petition . . ..

*Clam Shacks of Am., Inc.*, 109 Wn.2d at 98.

The statement of issues in defendant's petition for review is similarly deficient in raising this additional issue. The only issue raised by the issue statements in the petition for review is whether the facts relied on by Officer Kaffer to justify his protective frisk of defendant are constitutionally sufficient. It is only in the argument section that defendant discusses his alternative constitutional challenge with his argument that a finding that the frisk was justified would violate his right to bear arms. From the issue section alone,

however, it is impossible to tell that the right to bear arms is implicated in this case. In this way, defendants' petition for review resembles the petition for review in *Clam Shacks* in the generality of its presentation of the issues. This failure to concisely state the right to bear arms issue precludes review of that issue under RAP 13.7(b).

■ Similar requirements apply to supplemental briefs filed in this court under RAP 10.3(a)(3) and RAP 10.3(g), made applicable by RAP 13.7(e)(1) to supplemental briefs filed in this court. Defendant's supplemental brief suffers from the same defect as his petition for review. However, even if defendant had properly raised the right to bear arms issue in his supplemental brief, review of the issue would be inappropriate. *Douglas v. Freeman*, 117 Wn.2d 242, 258, 814 P.2d 1160 (1991) (declining to consider an issue "raised for the first time in a supplemental brief filed after review has been accepted").

Therefore, we will not review the right to bear arms issue raised by defendant. Defendant's conviction is affirmed.

ANDERSEN, C.J., and UTTER, DURHAM, SMITH, GUY, JOHNSON, and MADSEN, JJ., concur.