[No. 79690-4.   En Banc.]

Argued January 22, 2008.     Decided May 22, 2008.

THE STATE OF WASHINGTON, *Respondent*, v. MICHAEL DEREK SETTERSTROM, *Petitioner*.

*Peter B. Tiller* (of *The Tiller Law Firm*), for petitioner.

*Edward G. Holm, Prosecuting Attorney*, and *James C. Powers, Deputy*, for respondent.

¶1 J.M. JOHNSON, J. — A jury convicted Michael Setterstrom of possessing a controlled substance based on evidence he claims was discovered in violation of the Fourth and Fourteenth Amendments to the United States Constitution and article I, section 7 of the Washington Constitution. He wants the evidence suppressed and his conviction reversed. We agree with Setterstrom and reverse the Court of Appeals.

FACTS

¶2 On the morning of February 28, 2005, someone called the police, complaining about two young men in the lobby of the Department of Social and Health Services (DSHS) building in Tumwater. The caller alleged one of them was sleeping and the other appeared under the influence of drugs. The dispatcher sent out word, and Lieutenant (Lt.) Don Stevens and Officer Glen Staley, both of the Tumwater Police Department, responded.

¶3 Arriving at the DSHS building, the officers found the scene as the caller had described. One man, Joseph Rice,

was asleep on a bench in the lobby. The other, Michael Setterstrom (later the defendant and petitioner), sat next to Rice, filling out a benefits application.

¶4 The officers approached the men. Setterstrom had partially filled out the application, listing his name. Lt. Stevens saw the name and asked Setterstrom if that was his name; Setterstrom said yes. When asked how to spell it, Setterstrom changed his mind and said it was not his name and that he was just filling out the form for a friend. He said his real name was Victor M. Garcia.

¶5 Trying to determine which name was real, Lt. Stevens asked Rice (who by now was awake) what Setterstrom's name was. Before Rice could answer, Setterstrom blurted "Victor," in an apparent attempt to keep his friend from revealing his true identity.

¶6 Lt. Stevens described Setterstrom as nervous and fidgeting, behavior that quickly escalated. Lt. Stevens believed Setterstrom was under the influence, probably from methamphetamine. Lt. Stevens often encounters people on methamphetamine, and he believes they are erratic and can become violent without warning, even though Setterstrom himself did not stand up, put his hands in his pockets, or actually do or say anything threatening.

¶7 Lt. Stevens feared danger, so he patted down Setterstrom for weapons. In Setterstrom's right front pants pocket he felt hard objects. How many or what the objects were, Lt. Stevens did not remember. He testified that none felt like a gun.

¶8 Lt. Stevens reached into Setterstrom's pocket and grabbed everything inside. He does not remember what the hard objects were because, on emptying the pocket, he quickly focused on the small plastic baggie filled with white powder. He put the pocket's contents on the bench and told Setterstrom he was under arrest.

¶9 What happened next was, we assume, unusual. Setterstrom dropped to his knees, grabbed the baggie, and swallowed it. Lt. Stevens tried to make Setterstrom spit it out but

was unsuccessful. For obvious reasons, police never recovered the baggie.

¶10 The police did, however, arrest Setterstrom and seize the backpack he had with him. Inside Lt. Stevens found a small locked safe. He later applied for and received a warrant to search the safe. Inside was a baggie of methamphetamine, together with a needle, a pipe, and a set of scales.

¶11 The State charged Setterstrom with possessing a controlled substance. Setterstrom moved to suppress the evidence, claiming the search was illegal. The trial judge denied the motion. The case went to trial and a jury convicted Setterstrom. The judge sentenced him to six months in jail.

¶12 Setterstrom appealed, and the commissioner of Division Two of the Court of Appeals affirmed. Setterstrom moved to modify the commissioner's ruling, and a three-judge panel denied the motion. He petitioned this court for review, which was granted. *State v. Setterstrom,* 161 Wn.2d 1022, 169 P.3d 830 (2007).

ISSUES

1. Was the officer justified in frisking Setterstrom?

2. If the officer was justified in frisking Setterstrom, did he exceed the allowable scope of the search by removing everything from Setterstrom's pockets?

ANALYSIS

¶13 We review legal conclusions de novo and uphold a trial judge's fact findings if substantial evidence would convince a reasonable person the facts are true. *State v. Rankin,* 151 Wn.2d 689, 709, 92 P.3d 202 (2004).

¶14 The legal provisions involved here are the Fourth and Fourteenth Amendments to the United States Constitution and Washington Constitution article I, section

7. The Fourth Amendment forbids violations of "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The Fourteenth Amendment applies the Fourth Amendment to the states. *Mapp v. Ohio,* 367 U.S. 643, 655, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961). Article I, section 7 reads, "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." This provision provides greater protection than the Fourth Amendment, *Rankin,* 151 Wn.2d at 694, so we cite Washington cases applying article I, section 7 over federal cases applying the Fourth Amendment.

¶15 Without probable cause and a warrant, an officer is limited in what he can do. He cannot arrest a suspect; he cannot conduct a broad search. *State v. Hudson,* 124 Wn.2d 107, 112, 874 P.2d 160 (1994). An officer may, though, frisk a person for weapons, but only if (1) he justifiably stopped the person before the frisk, (2) he has a reasonable concern of danger, and (3) the frisk's scope is limited to finding weapons. *State v. Collins,* 121 Wn.2d 168, 173, 847 P.2d 919 (1993). The failure of any of these makes the frisk unlawful and the evidence seized inadmissible. Setterstrom concedes the initial stop was justified, so we need decide only whether Lt. Stevens had a reasonable concern of danger and whether Lt. Stevens properly limited the scope of the frisk.

## Lt. Stevens Was Not Justified in Frisking Setterstrom

¶16 To justify a frisk without probable cause to arrest, an officer must have a reasonable belief, based on objective facts, that the suspect is armed and presently dangerous. *Id.* Reasonable belief that the suspect is armed and presently dangerous means " '*some basis from which the court can determine that the detention was not arbitrary or harassing.*' " *State v. Belieu,* 112 Wn.2d 587, 601-02, 773 P.2d 46 (1989) (quoting *Wilson v. Porter,* 361 F.2d 412, 415 (9th Cir. 1966)).

¶17 We do not find such a basis here. The police received an anonymous call claiming Setterstrom was under the

influence, heard a lie about his name, and observed his nervous, fidgety behavior. The record shows no threatening gestures or words. Setterstrom did not even stand. At most, the record shows that Setterstrom was under the influence; this is not a crime in itself.

¶18 Moreover, Setterstrom was lawfully in a public area of the DSHS building, filling out a DSHS benefits form. It seems likely that some people filling out benefits forms exhibit erratic behavior, making employment difficult and benefits applicable. This is not a situation where the officers encountered Setterstrom in a dark alley in a crime-ridden area. *See State v. Glover,* 116 Wn.2d 509, 514, 806 P.2d 760 (1991).

¶19 Lt. Stevens has been on the force for 20 years, three of them spent in the narcotics division. He may, of course, rely on this experience in deciding how to act. *Id.* Surely officers may protect themselves when the situation reasonably appears dangerous, but a frisk is a narrow exception to the rule that searches require warrants. The courts must be jealous guardians of the exception in order to protect the rights of citizens. *Hudson,* 124 Wn.2d at 112. The justification for the frisk here was simply not sufficient.

¶20 Since the frisk was unjustified, we do not decide whether the officer took the frisk too far.

CONCLUSION

¶21 We hold that the officer did not have justification to frisk Setterstrom. Unless already holding a suspect legitimately, officers must have some basis beyond nervousness and lying to justify the intrusion of a frisk. The officer here lacked such a basis.

¶22 There is one final issue. Setterstrom was convicted for the methamphetamine in his backpack, not the methamphetamine in his pocket. The officers had a warrant to search the backpack, which, if valid, would render the evidence found admissible and so justify the conviction. The

State admitted at oral argument that the warrant rose or fell on the legality of the frisk. Since we hold the frisk unconstitutional, we remand to the trial court to reverse Setterstrom's conviction.

ALEXANDER, C.J., and C. JOHNSON, MADSEN, SANDERS, CHAMBERS, OWENS, FAIRHURST, and STEPHENS, JJ., concur.