**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 78958-9-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | ORDER WITHDRAWING |
| KRISTOPHER CHARLES MARTIN, | ) | AND SUBSTITUTING |
| | ) | OPINION |
| Appellant. | ) | |
| | ) | |

The court has determined that the opinion in the above-entitled case filed on June 15, 2020 shall be withdrawn and a substitute published opinion be filed.

Now, therefore, it is hereby

ORDERED that the opinion filed on June 15, 2020 is withdrawn and a substitute published opinion shall be filed.

FOR THE COURT:

_Mann, C.J._

_Chun, J._

_Smith, J._

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 78958-9-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| KRISTOPHER CHARLES MARTIN, | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |
| | ) | |

MANN, C.J. — Absent an applicable exception, warrantless searches and seizures are per se unreasonable and violate both the United States and Washington Constitutions. While asleep in a Starbucks store, Kristopher Martin was subjected to a warrantless search. Based on the search, Martin was charged with and found guilty of possession of a controlled substance.

Martin appeals his conviction and contends that the trial court erred by denying his motion to suppress because the search did not meet either the Terry[1] stop or community caretaking exceptions to the warrant requirement. We agree, vacate Martin's conviction, and remand to the trial court for further proceedings consistent with this opinion.

---

[1] Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

I.

On December 11, 2017, at 8:27 a.m., Officer Nicholas Bickar responded to a 911 call from a Starbucks employee, requesting assistance with the removal of a sleeping person inside the store. When Bickar arrived, he saw Martin sleeping in a chair. Bickar gestured to the Starbucks employee and received a responsive gesture from the employee that Martin was the person identified in the 911 call.

When Bickar approached Martin, he noticed Martin was wearing multiple jackets that had pockets. Bickar attempted to wake Martin, first by raising his voice and then by squeezing and shaking his left shoulder. Martin remained unresponsive. Trying not to startle Martin, Bickar then performed a "light sternum rub," using his knuckles to rub Martin's sternum. While Bickar attempted to wake Martin, he would briefly gain consciousness, but quickly lose consciousness before Bickar could communicate with him.

Bickar began to suspect that Martin was under the influence of drugs. Bickar determined that he would need to use a "hard sternum rub," but feared Martin might react violently because hard sternum rubs can be painful and startling for a person sleeping. During this encounter, Bickar noted that there were Starbucks customers sitting within four feet of Bickar and Martin and there were between seven and eight people, not including staff, in Starbucks.

Before Bickar proceeded with the hard sternum rub, Bickar noticed the end of a metal utensil sticking out of Martin's pocket. Bickar worried that the metal utensil could be a knife or another utensil sharpened into a weapon. Bickar also expressed concerns about sharp needles. Without feeling the outside of the pocket, Bickar removed the

utensil.  The utensil was a cook spoon, had burn marks on the bottom, and a dark brown residue on the inside.  At that point, Bickar determined that he had probable cause to arrest Martin for possession of drug paraphernalia and continued searching Martin.  While searching Martin, Bickar found methamphetamine, heroin, cocaine, and other drug paraphernalia.

After removing the drugs from Martin, Bickar conducted a hard sternum rub.  Once Martin woke up, Bickar told him that he was under arrest, proceeded to handcuff him, and brought him to an aid car.  Because Martin did not wake up easily, he was transported to the hospital.  Bickar called the aid car sometime prior to waking up Martin.

Martin moved to suppress all evidence collected as a result of the unlawful detention and search.  The court heard testimony from Officer Bickar and denied Martin's motion to suppress concluding, "[c]ommunity caretaking and Terry authorized Officer Bickar to take necessary precautions to protect himself and others from a potentially dangerous situation.  Officer Bickar was authorized to pat the Defendant down for potential weapons."

Martin proceeded to a stipulated bench trial on the charge of unlawful possession of a controlled substance.  The court found Martin guilty.  The court sentenced Martin to 30 days of confinement.  Martin appeals.

## II.

The Washington Constitution commands: "No person shall be disturbed in his private affairs, or his home invaded, without authority of law."  Wash. Const. art. I, § 7.  The United States Constitution also protects people from unreasonable searches and

-3-

seizures. U.S. Const. amend. IV. Absent an applicable exception, warrantless searches and seizures are per se unreasonable, and violate these provisions. State v. Russell, 180 Wn.2d 860, 867, 330 P.3d 151 (2014). "The State bears a heavy burden to prove by clear and convincing evidence that a warrantless search falls within one of those exceptions." Russell, 180 Wn.2d at 867.

When reviewing the denial of a motion to suppress, the appellate court determines whether substantial evidence supports the trial court's findings of fact and whether the findings of fact support the trial court's conclusions of law. State v. Boisselle, 194 Wn.2d 1, 14, 448 P.3d 19 (2019). We review the trial court's conclusions of law de novo. Boisselle, 194 Wn.2d at 14.

## A.

Martin first contends that the trial court erred in finding the search permissible under Terry because "[f]irst, there was [no] reasonable suspicion that Mr. Martin was engaged in criminal activity. Second, there were not specific and articulable reasons to believe Mr. Martin was armed and dangerous. And third, even if Terry applied, the officer exceeded the lawful scope of the frisk."

The State argued before the trial court and in its brief before this court, that the search was lawful under Terry. At oral argument, however, the State conceded that the search was not lawful under Terry because Bickar did not testify that he was conducting a criminal trespass investigation.

We accept the State's concession that the search was not valid as a Terry stop. Terry stops are an exception to the warrant requirement. In a Terry stop, "[o]fficers may briefly, and without warrant, stop and detain a person they reasonably suspect is, or is

-4-

about to be, engaged in criminal conduct." State v. Day, 161 Wn.2d 889, 895, 168 P.3d 1265 (2007). "While Terry does not authorize a search for evidence of a crime, officers are allowed to make a brief, nonintrusive search for weapons if, after a lawful Terry stop, 'a reasonable safety concern exists to justify the protective frisk for weapons' so long as the search goes no further than necessary for protective purposes." Day, 161 Wn.2d at 895. In making this determination, "we consider the totality of the circumstances, including the officer's subjective belief." Day, 161 Wn.2d at 896.

A protective frisk does not violate a defendant's rights when (1) the initial stop is legitimate, (2) a reasonable safety concern exists to justify a protective frisk for weapons, and (3) the scope of the frisk is limited to the protective purpose. State v. Collins, 121 Wn.2d 168, 173, 847 P.2d 919 (1993). "The failure of any of these makes the frisk unlawful and the evidence seized inadmissible." State v. Setterstrom, 163 Wn.2d 621, 626, 183 P.3d 1075 (2008). "A reasonable safety concern exists, and a protective frisk for weapons is justified, when an officer can point to 'specific and articulable facts' which create an objectively reasonable belief that a suspect is 'armed and presently dangerous.'" Collins, 121 Wn.2d at 173. Further, "[t]he officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent person in the circumstances would be warranted in the belief that his or her safety or that of others was in danger." Collins, 121 Wn.2d at 173.

This search fails to meet the requirements under Terry. Starbucks is open to the public. The record does not support the trial court's finding that Bickar was conducting a criminal investigation for trespass because there is no evidence in the record that Starbucks had trespassed Martin from the premises. Also absent from the record is

evidence supporting Bickar's claim that Martin sleeping created a reasonable safety concern. Bickar performed a hard sternum rub with several people seated in close proximity to Martin. While Bickar stated that, based on his training and experience as an officer, he feared Martin would react violently once awake, Bickar's actions do not support his attestation. Bickar did not ask patrons sitting less than three feet from Martin to move away before using a hard sternum rub to wake Martin.

Finally, even if Bickar were conducting a criminal investigation for trespass, the search exceeded the scope of a frisk under Terry. An officer may "conduct a limited pat-down of the outer clothing of a person in an attempt to discover weapons that could cause harm." State v. Russell, 180 Wn.2d 860, 867, 330 P.3d 151 (2014). "The officer may not slide, squeeze or in any other manner manipulate the object to ascertain its incriminating nature. Such manipulation of the object will exceed the scope of a Terry frisk." State v. Garvin, 166 Wn.2d 242, 251, 207 P.3d 1266 (2009). Bickar did not pat-down the outside of Martin's pocket where the utensil handle was protruding. Instead, Bickar removed the utensil because he thought it could have been a knife or a metal utensil that had been sharpened into a weapon. Had Bickar felt the outside of Martin's pocket, he would have learned it was a spoon and not a sharp object. Removing the spoon without a pat down exceeded the scope of a Terry frisk.

The search was not lawful under Terry because there was no reasonable suspicion that a crime had been committed, there was not a reasonable safety concern, and the search exceeded the lawful scope of a frisk.

B.

Martin next contends that the community caretaking exception to the warrant requirement is also not applicable. We agree.

Recently, the Washington Supreme Court clarified the appropriate factors for determining whether an officer has exercised his or her emergency aid community caretaking function. Boisselle, 194 Wn.2d at 10. "[I]n order for the community caretaking exception to apply, a court must first be satisfied that the officer's actions were 'totally divorced' from the detection and investigation of criminal activity." Boisselle, 194 Wn.2d at 10. The threshold issue for the court is "whether the community caretaking exception was used as a pretext for a criminal investigation before applying the community caretaking exception test." Boisselle, 194 Wn.2d at 11.

Once the court is satisfied that officers did not use the exception as pretext for criminal investigation, the court must next determine whether the warrantless search was reasonable. Boisselle, 194 Wn.2d at 10. "When a warrantless search falls within an officer's general community caretaking function, such as the performance of a routine check on health and safety, courts must next determine whether the search was reasonable." Boisselle, 194 Wn.2d at 11-12. "Where . . . an encounter involves a routine check on health and safety, its reasonableness depends upon a balancing of a citizen's privacy interests in freedom from police intrusion against the public's interest in having police perform a 'community caretaking function.'" Boisselle, 194 Wn.2d at 12.

"An officer's emergency aid function, however arises from a police officer's community caretaking responsibility to come to the aid of persons believed to be in danger of death or physical harm." Boisselle, 194 Wn.2d at 12 (internal quotations

omitted). "Compared with routine checks on health and safety, the emergency aid function involves circumstances of greater urgency and searches resulting in greater intrusion." Boisselle, 194 Wn.2d at 12. "Accordingly, courts apply additional factors to determine whether a warrantless search falls within the emergency aid function of the community caretaking exception." Boisselle, 194 Wn.2d at 12.

In Boisselle, the court clarified that the three-part emergency aid test announced in State v. Kinzy, 141 Wn.2d 373, 386-87, 5 P.3d 668 (2000) is the applicable test, but amended the three-part test "to make clear that there must be a present emergency for the emergency aid function test to apply." Boisselle, 194 Wn.2d at 13. Thus, the exception applies when "(1) the officer subjectively believed that an emergency existed requiring that he or she provide immediate assistance to protect or preserve life or property, or to prevent serious injury, (2) a reasonable person in the same situation would similarly believe that there was a need for assistance, and (3) there was a reasonable basis to associate the need for assistance with the place searched." Boisselle, 194 Wn.2d at 13-14. "If a warrantless search falls within the emergency aid function, a court resumes its analysis and weighs the public's interest against that of a citizen's." Boisselle, 194 Wn.2d at 12.

In balancing Martin's privacy interests against the public's interest in having the police perform a community caretaking function, we conclude that removing the spoon from Martin's pocket was unreasonable. There is insufficient evidence in the record to find that Bickar was conducting a routine check on health and safety or rendering emergency aid. Bickar stated that he was dispatched to Starbucks "for an individual they wanted to leave, who was sleeping." Absent from the record is any evidence

-8-

tending to show that Bickar was dispatched to assist with an unresponsive customer or customer in need of emergency aid. Bickar indicated that he could tell Martin was breathing and therefore, did not check his pulse. After Bickar performed a light sternum rub, Martin opened his eyes, but fell back to sleep before Bickar could communicate with Martin. Bickar did not feel like he needed to perform lifesaving maneuvers. Other Starbucks customers sat a few feet away from Martin as he slept and Bickar did not indicate that any customers or employees expressed concern that Martin was in danger of death or physical harm. Finally, Bickar did not ask the other Starbucks customers to back away from the area where Martin slept before performing the hard sternum rub. Bickar did not subjectively believe an emergency existed and a reasonable person in the same situation would not believe there was a need for assistance.

Furthermore, even if the community caretaking exception applied to this search, a simple pat-down on the outside of Martin's coat pocket would have alleviated any concern that the metal utensil was a sharp object or weapon. See State v. Acrey, 148 Wn.2d 738, 754, 64 P.3d 594 (2003) (concluding that a pat-down of a juvenile before putting him in a patrol car was reasonable for officer safety while performing their community caretaking function of transporting the juvenile home after his mother's request for officer assistance). Removing the spoon violated Martin's right to be free from unreasonable searches and seizures.

We vacate Martin's conviction and remand to the trial court for further proceedings consistent with this opinion.

No. 78958-9-I/10

_____ Mann, C.J.

WE CONCUR:

_____     _____
Chun, J.                     Smith, J.