411 So.2d 212 (1982)
The STATE of Florida, Appellant,
v.
Jimmy COBBS, Appellee.
No. 81-218.
District Court of Appeal of Florida, Third District.
February 2, 1982.
Rehearing Denied April 5, 1982.
*213 Jim Smith, Atty. Gen. and Theda R. James, Asst. Atty. Gen., for appellant.
Weiner, Robbins, Tunkey & Ross and Geoffrey C. Fleck, Miami, for appellee.
Before SCHWARTZ and DANIEL S. PEARSON, JJ., and OWEN, WILLIAM C., Jr. (Ret.), Associate Judge.
DANIEL S. PEARSON, Judge.
The trial court suppressed evidence seized from the defendant incidental to an arrest following a stop found to be unlawful. The determination that the stop was unlawful was based on two conclusions, both of which are, in our view, erroneous. The first was that the provisions of Section 316.215, Florida Statutes (1979), which, inter alia, make it a violation of the State Uniform Traffic Control Law to operate ill-equipped vehicles are inapplicable to motorcycles. But as Section 316.215(4) so plainly states:
"The provisions of this chapter with respect to equipment required on vehicles shall not apply to motorcycles or motordriven cycles, except as herein made applicable." (emphasis supplied).
The chapter thereafter specifically makes applicable to motorcycles the prohibition against their operation so as to generate certain excessive sound levels. § 316.293(2)(a), Fla. Stat. (1979). That prohibition, read in conjunction with the counterpart requirement that "every motor vehicle ... be equipped with an exhaust system in good working order and in constant operation, including muffler, manifold pipe, and tailpiping to prevent excessive or unusual noise," Section 316.272(1), Florida Statutes (1979), compels the conclusion that this equipment requirement applies to motorcycles. Thus, the defendant could, by operating a motorcycle which generated excessive sound levels and which may have been ill-equipped to prevent this noise, violate Section 316.215. Therefore, contrary to the trial court's opinion, it was not "impossible" for an officer to entertain a reasonable suspicion that a violation of this statute was being committed in his presence.
The second conclusion of the trial court was that even if, arguendo, Section 316.272(1) were applicable to motorcycles, the officer, admittedly not equipped with any sound level measuring equipment, could not by his own sense of hearing determine whether the noise of the defendant's motorcycle was in excess of the statutorily defined sound level limits, and therefore, as a matter of law, could not entertain a founded or articulable suspicion that the defendant was violating the law.
It is apodictic that the founded or articulable suspicion which justifies a stop is not the same as proof beyond a reasonable doubt which justifies a conviction. A police officer's hearing may deceive him, but so may his sense of sight, smell, taste and touch. We do not require that an officer's suspicion prove to be right; we require only that the suspicion be founded and articulable. Moreover, the law does not require that every police officer have with him a narcotics sniffing dog, a panoramic breathylizer, a radar gun, or a decibel counter to verify what he smells or sees or hears. And, of course, neither we nor any other court will invalidate a lawful stop simply because it turns out that the senses *214 deceive,[1] any more than we will validate an unlawful search by what is found.
We see no reason why the rule should be any different merely because an offense is capable of precise measurement with an instrument. In People v. Johanson, 28 Ill. App.3d 82, 328 N.E.2d 331 (1975), a police officer observed a tractor trailer, the rear tandem axle tires of which appeared deflated and the springs of which appeared heavily bowed. The officer stopped the truck and checked tire inflation and the cargo. He then ordered the truck to follow him to the nearest weigh station. The court held the stop valid since the officer had articulated a reasonable suspicion for believing the truck was overweight in violation of state law. In Mercer v. State, 6 Md. App. 370, 251 A.2d 387 (1969), a police officer saw copper pipes extending approximately four feet beyond the end of a pickup truck. That extension was more than the legal limit and necessitated a red flag. The court held that the officer's stop of the vehicle to verify the possible violation was valid.
In the present case, the police officer testified:
"Q What was the actual reason for the initial stop of the defendant?
"A As I said, his motorcycle seemed to be running without any muffler or baffle at all in the exhaust system on that motorcycle. The sound was very loud. One might describe it as window rattling loud. As this motorcycle approached us at a reasonably high rate of speed and with this roaring sound I elected to stop the motorist and apprise him of the like, you know, our observations and of the infraction of riding a motorcycle with straight pipes.
... .
"Q The stop is definitely based upon the noise that you heard as opposed to anything else?
"A Yes.
"Q When you initially stopped the motorcycle what did you do? After you flagged him down with the flashlight did he immediately stop?
"A He pulled over by us and he stopped. I told him that his motorcycle had exceptional loud pipes. I also apprised him of the fact that he was getting on it and was probably exceeding the speed limit but, again, I didn't expound on that because there is no way we could have clocked him and I requested to see his driver's license."
Thus, having heard what he believed to be excessive noise, the officer had a founded and articulable suspicion that a violation of Section 316.272(1) was occurring, justifying a stop to examine the exhaust system of the motorcycle.[2]
The defendant argues that to sanction a stop without absolute certainty that the statutory noise limit was exceeded is fraught with potential for abuse. We see no greater potential for abuse in this case than in any case where an officer's visual observations of a vehicle's progress lead him to the founded suspicion that the driver of a vehicle is committing a traffic offense. See Bailey v. State, 319 So.2d 22 (Fla. 1975); Ulesky v. State, 379 So.2d 121 (Fla. 5th DCA 1979); Gustafson v. State, 243 So.2d 615 *215 (Fla. 4th DCA 1971). So long as there exists a basis from which courts can determine that the stop was not arbitrary, see Wilson v. Porter, 361 F.2d 412 (9th Cir.1966), the fact that that basis comes from an officer's testimony about what his senses revealed does not make the stop any less justified.[3]See United States v. Thompson, 409 F.2d 113 (6th Cir.1969) (while the defendant disputed the officer's testimony that the inspection sticker on the defendant's slow-moving vehicle appeared to be extremely faded and covered with glue, that dispute is a credibility issue to be resolved by the trial court).
Lastly, the trial court's finding that because the defendant was not ultimately arrested or prosecuted for a violation of Section 316.272(1), the stop for an investigation of that offense was, ipso facto, pretextual,[4] is without basis in the law. United States v. Maslanka, 501 F.2d 208 (5th Cir.1974). In the present case, upon the immediate discovery that Cobbs had no driver's license, he was arrested. A search incident to that arrest, not separately challenged, revealed a concealed firearm and narcotics, and it was for these offenses that Cobbs was informed against. We have quite clearly held that the validity of a stop is unaffected by the fact that the ultimate arrest and prosecution are for a different crime thereafter discovered, A.L.B. v. State, 399 So.2d 483 (Fla. 3d DCA 1981), and it follows that a stop for a minor offense hardly becomes pretextual because an arrest or prosecution for that minor offense is aborted upon the discovery of a more serious violation of the law.
Reversed and remanded.
NOTES
[1] Since, as will be seen infra, after the stop in the present case, the police officer became occupied with more serious transgressions than inadequate equipment, there is no indication that the noise level of the motorcycle was ever tested or the equipment inspected. We do not know, therefore, whether the officer's senses did deceive.
[2] Stops for defective or loud mufflers or loud "pipes" have occurred in a number of cases in which the validity of the stop was either not made an issue, see, e.g., United States v. Marshall, 499 F.2d 76 (5th Cir.1974); People v. Muniz, 4 Cal. App.3d 562, 84 Cal. Rptr. 501 (1970); Wimberly v. State, 434 S.W.2d 857 (Tex.Cr.App. 1968), or, if an issue, the validity determined with no recitation of the facts, see, e.g., People v. Daw, 267 Cal. App.2d 560, 73 Cal. Rptr. 89 (1968). See also Taylor v. McDonald, 346 F. Supp. 390 (N.D.Tex. 1972) (probable cause to arrest for disturbing the peace where car noise could be heard a block and a half away).
[3] Guarding against pretextual stops or arrests, or ferreting out false testimony about, e.g., founded suspicion, probable cause, the giving of Miranda warnings, the obtaining of consent, is a function of the fact-finder. It is, however, noteworthy that despite the defendant's fears, law enforcement officers do not automatically conform their testimony to meet the law's requirements concerning founded suspicion. See, e.g., Coladonato v. State, 348 So.2d 326 (Fla. 1977); Thomas v. State, 297 So.2d 850 (Fla. 4th DCA 1974); State v. Rheiner, 297 So.2d 130 (Fla. 3d DCA 1974); Richardson v. State, 291 So.2d 253 (Fla. 1st DCA 1974).
[4] There is no other basis in the record upon which the trial court could find that the stop was pretextual. Indeed, the trial court stated that it was "sure the officer acted in good faith," but because of the statute had no right to stop the motorcycle.