(853 P.2d 1168)
No. 67,570

STATE OF KANSAS, *Appellee*, v. JOE LOUIS LARA, *Appellant*.

Opinion filed June 4, 1993.

*Susan E. Jones*, of Kansas Rural Legal Services, of Garden City, for appellant.

*John P. Wheeler, Jr.*, county attorney, *Paula Sue Greathouse*, assistant county attorney, *Ricklin R. Pierce*, former county attorney, and *Robert T. Stephan*, attorney general, for appellee.

Before RULON, P.J., ELLIOTT, J., and JACK L. BURR, District Judge, assigned.

RULON, J.: Joe Louis Lara, defendant, appeals his conviction and sentence imposed for driving while his license was suspended, in violation of K.S.A. 8-262. Defendant contends K.S.A. 8-1739(a), the statute that was the basis for the traffic stop, is unconstitutionally vague; asserts the State failed to prove he was properly notified by the division of motor vehicles that his driver's license had been suspended; and claims the district court imposed an enhanced sentence because he exercised his right to a trial de novo following conviction and sentencing by the district magistrate judge. We affirm.

On June 11, 1991, Finney County Sheriff's Deputy Randy J. Evans stopped defendant for driving a utility truck that was making a loud exhaust noise, which sounded like a farm tractor without a muffler, in violation of K.S.A. 8-1739(a). Defendant verbally identified himself and handed Evans the pink copy of a notice of suspension. Defendant told Evans he knew his driver's license was suspended. Evans verified that defendant's license was suspended, then arrested him and charged him with violating K.S.A. 8-262(a).

The district magistrate judge convicted defendant of driving while his license was suspended and sentenced him to five days in jail, which sentence was suspended upon the condition that defendant pay a $100 fine and $32 court costs within 90 days of imposition of sentence.

Defendant appealed to the district court and filed a motion to suppress all evidence arising from the traffic stop, contending the phrase "excessive or unusual noise" in K.S.A. 8-1739(a) was unconstitutionally vague. The court determined the language in K.S.A. 8-1739(a) relating to excessive or unusual noise was not unconstitutionally vague and denied the motion.

At trial, the State presented the testimony of Evans and defendant's certified driving record from the Kansas Department of Revenue Division of Vehicles. The certified driving record shows defendant's driver's license had been suspended on August 22, 1989, and that notice of the suspension had been mailed to defendant at Southview Trl, Scott City, Kansas, 67871. Defendant unsuccessfully objected to admission of the driving record, asserting it failed to prove that notice of the suspension had been mailed to his correct address.

The district court found defendant guilty of driving while his license was suspended, then sentenced him to 30 days in jail with probation after serving five consecutive days. Defendant was ordered to pay a $100 fine and $32 court costs within 180 days of being released from jail.

## CONSTITUTIONALITY OF K.S.A. 8-1739(a)

K.S.A. 8-1739(a) provides:

"Every vehicle shall be equipped, maintained and operated so as to prevent excessive or unusual noise. Every motor vehicle at all times shall be equipped with a muffler or other effective noise suppressing system in good working order and in constant operation, and no person shall use a muffler cut-out, bypass or similar device."

Defendant contends the phrase "excessive or unusual noise" is unconstitutionally vague and indefinite because the statutory language fails to convey a sufficiently definite warning as to what conduct is proscribed and because persons of common intelligence must speculate what the language means and differ as to how K.S.A. 8-1739(a) should be applied. Defendant specifically argues

there is no objective standard contained in K.S.A. 8-1739(a) and no clear way to know what degree of loudness will subject an individual to application of the statute. Defendant finally asserts K.S.A. 8-1739(a) is so vague that, as a result, law enforcement officers have unbridled discretion to stop a person for a loud muffler violation.

In *State v. Kirkland*, 17 Kan. App. 2d 425, 428, 837 P.2d 846 (1992), we stated:

" 'An appellate court adheres to the proposition that the constitutionality of a statute is presumed, that all doubts must be resolved in favor of its validity, and before the statute may be stricken down, it must clearly appear the statute violates the constitution. Moreover, it is the court's duty to uphold the statute under attack, if possible, rather than defeat it, and if there is any reasonable way to construe the statute as constitutionally valid, that should be done. [Citation omitted.]' *Guillan v. Watts*, 249 Kan. 606, 618, 822 P.2d 582 (1991).

"*State ex rel. Murray v. Palmgren*, 231 Kan. 524, 532, 646 P.2d 1091 (1982), *reh. denied* 459 U.S. 1229 (1983), sets forth the rules regarding vagueness:

' "The test to determine whether a criminal statute is unconstitutionally void by reason of being vague and indefinite is whether its language conveys a sufficiently definite warning as to the conduct proscribed when measured by common understanding and practice. If a statute conveys this warning it is not void for vagueness. Conversely, a statute which either requires or forbids the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application is violative of due process. At its heart the test for vagueness is a commonsense determination of fundamental fairness." [Citation omitted.]'

"In *State v. Lackey*, 232 Kan. 478, 479, 657 P.2d 40 (1983), our Supreme Court stated:

' "It is established that a law fails to meet the requirements of the Due Process Clause if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits or leaves judges and jurors free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case." [Citation omitted.]'

"*Guillan v. Watts* sets forth our obligation in this manner: 'In determining whether a statute is void for vagueness, two inquiries are appropriate: (1) whether the statute gives fair warning to those persons potentially subject to it, and (2) whether the statute adequately guards against arbitrary and discriminatory enforcement.' 249 Kan. at 618."

"When deciding a vagueness question, a court will assign the words of the statute their ordinary and popularly understood meaning unless there exists a legislative intent to the contrary."

*People v. Ford,* 221 Ill. App. 3d 354, 581 N.E.2d 1189, 1201 (1991), *cert. denied* 587 N.E.2d 1019 (1992).

In *State v. Fisher,* 230 Kan. 192, 194, 631 P.2d 239 (1981), Justice Miller quoted the court's statement in *State v. Randol,* 226 Kan. 347, 351, 597 P.2d 672 (1979):

" 'The fact that the prescribed standard of conduct in a criminal statute may be one of varying degree dependent upon the factual circumstances in each case does not make a criminal law unconstitutional. . . .'

" ' "[T]he law is full of instances where a man's fate depends on his estimating rightly, that is, as the jury subsequently estimates it, some matter of degree." ' "

Although our appellate courts have not yet addressed this question, other jurisdictions with statutes similar to K.S.A. 8-1739(a) have upheld their constitutionality. *Smith v. Peterson,* 131 Cal. App. 2d 241, 280 P.2d 522 (1955); *Department of Public Safety v. Buck,* 256 S.W.2d 642 (Tex. Civ. App. 1953).

In *Buck,* the Court of Civil Appeals of Texas stated:

"It is quite true that in civil actions the meaning of the term 'excessive' is to be determined in the light of, and with reference to, the cause of action asserted. In a measure that test is applicable here—as applied to the operators of a motor vehicle. As to him the word is to be interpreted as descriptive 'of the evil or mischief intended to be prohibited.' Webster's New International Dictionary, 2d Ed., gives the following definition of the word 'excessive':

'Characterized by, or exhibiting excess, as: a. Exceeding what is usual and proper; over much. b. Greater than the usual amount or degree; exceptional, very great.'

"The word 'unusual' simply means not usual, uncommon.

. . . .

"Every motor vehicle when in normal operation necessarily makes some noise, emits some smoke, and permits gas or steam to escape to some extent. They are in constant operation on our streets and highways and even in the sparsely settled areas of our State they are operated daily within the hearing and view of the citizens.

"We think any ordinary and interested person would have no difficulty in determining whether or not an excessive and unusual noise or offensive or excessive exhaust fumes accompanied the operation of a motor vehicle." 256 S.W.2d at 645-46.

The Court of Appeals of California in *Smith* opined:

"It appears to us that the requirement that a motor vehicle be equipped with a muffler in constant operation so as to prevent any excessive or unusual noise seems as certain as any rule which could be practically enforced.

Motor vehicles have been used so long and have become so common, and mufflers so uniformly used to minimize the noise from their exhaust that what is usual has become a matter of common knowledge, and anything in excess of that is excessive and unusual, and usually capable of ascertainment as such. It may be that physicists have established definite standards of loudness of sound and means for measuring it, but this does not mean that such laboratory operations must be carried out by traffic officers on the highway where violators of this statute must be found and the evidence against them obtained. . . .

"We conclude that the words 'excessive' or 'unusual', when viewed in the context in which they are used are sufficiently certain to inform persons of ordinary intelligence of the nature of the offense which is prohibited, and are therefore sufficient to establish a standard of conduct which is ascertainable by persons familiar with the operation of automobiles." 131 Cal. App. 2d at 249-50.

We agree with the rationale set forth in *Buck* and *Smith* and find the words "excessive" and "unusual" as used in K.S.A. 8-1739(a) are sufficiently certain and have well-accepted meanings. K.S.A. 8-1739(a) gives fair warning to those persons potentially subject thereto and adequately guards against arbitrary and discriminating enforcement. We hold K.S.A. 8-1739(a) is not void for vagueness.

## NOTICE OF SUSPENSION

Defendant contends the certified driving record is defective because it did not contain proof that the notice of suspension was mailed to his correct address. Defendant compares the address on the September 22, 1989, suspension order to which the notice was mailed with the different address on the computer printout of his driving history dated June 17, 1991, to support his proposition that the notice of suspension was not mailed to the correct address as required by law. Defendant further contends the district court erred by relying on his actual knowledge of the suspension to cure the invalid notice and to support his conviction.

K.S.A. 8-255(d) provides: "Upon suspending, revoking or disqualifying the driving privileges of any person as authorized by this act, the division shall immediately notify the person in writing."

In *State v. Jones*, 231 Kan. 366, Syl., 644 P.2d 464 (1982), our Supreme Court stated:

"In a prosecution under K.S.A. 1981 Supp. 8-262, for driving while one's license is suspended, it is incumbent upon the State to offer proof that a copy of the order of suspension, or written notice of that action, has been mailed to the last known address of the licensee according to the division's records. The State need not prove that the licensee actually received the notice, had actual knowledge of the revocation, or had specific intent to drive while the license was suspended."

"K.S.A. 8-248 makes it incumbent upon every holder of a driver's license to notify the division within ten days of the time the holder moves from the address designated on the holder's license." *Jones*, 231 Kan. at 368.

In *State v. Moffett*, 240 Kan. 406, 408, 728 P.2d 1330 (1986), Justice McFarland clarified the opinion in *Jones*:

"We believe that the legislature clearly intended, through enactment of K.S.A. 8-248, to place the burden on the driver's license holder to notify the Division when the holder moves from the address named on his or her driver's license, or license application. The Division should be able to rely on its driver's license computer records in determining the address to which to send a notice of suspension. Therefore, the notice should be mailed to the address on the license or application unless superseded by a notice from the license holder pursuant to K.S.A. 8-248 advising the Division of an address change. If multiple notices under K.S.A. 8-248 have been received, obviously, the most recent address thereon is the proper address for the mailing of such suspension notice. The mailing of such notice to such address satisfies the requirements of K.S.A. 1985 Supp. 8-255(b) [now K.S.A. 8-255(d)]. To hold otherwise could result in a driver with a transient life style being virtually immune from driver's license suspension. . . . The Division's determination of the proper address to which to mail a suspension notice should be limited to the records relative to the driver's license application, the license itself, or address change notices from the holder of the license pursuant to K.S.A. 8-248."

More recently, this court in *State v. Lovett*, 17 Kan. App. 2d 450, 453, 839 P.2d 53 (1992), said: "The failure to show that the notice was mailed as required by law is fatal to the charge of driving while the license is suspended." Our court in *Lovett* emphasized that a defendant's knowledge of the license suspension is basically irrelevant, stating:

"The legislature required service of the notice of suspension on the licensee to complete the suspension process. The failure of the DMV to comply with the statutory process renders its attempted suspension of defendant's license void as a matter of law. Actual knowledge of an ineffective suspension by the licensee does not render it valid." 17 Kan. App. 2d at 456.

We hold the division of motor vehicles complied with the statutory process in this case and properly provided notice of suspension to defendant's last known address according to its records. We are not persuaded by defendant's attempt to compare the address in the division's records as of September 22, 1989, with the address contained in the June 17, 1991, computer printout of his driving history. We note the complaint filed June 24, 1991, shows yet a third address for defendant. We conclude the State proved that defendant was properly notified by the division. The district court's reliance upon defendant's actual knowledge that his driver's license had been suspended was harmless error. See *State v. Bell*, 239 Kan. 229, 235, 718 P.2d 628 (1986).

## THE SENTENCE

Defendant contends a more severe sentence was imposed because he exercised his right to a trial de novo in order to contest the constitutionality of K.S.A. 8-1739(a). Defendant relies on *North Carolina v. Pearce*, 395 U.S. 711, 23 L. Ed. 2d 656, 89 S. Ct. 2072 (1969), to support his contention that the enhanced sentence imposed by the district court violated due process of law.

Defendant further asserts the district court erred by failing to consider the sentencing factors in K.S.A. 21-4601 and K.S.A. 21-4606 when imposing sentence.

In *State v. Parker*, 213 Kan. 229, 516 P.2d 153 (1973), our Supreme Court addressed the application of *Pearce* to a defendant who received a greater sentence following a trial de novo before a jury after appeal from his conviction in city court. Justice Fromme noted that *Pearce* stated:

" 'Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.' (395 U.S. 725.)

. . . .

" 'In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear.

Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal.' (395 U.S. 726)" 213 Kan. at 234.

Justice Fromme recognized that *Pearce* does not foreclose an enhanced sentence in all cases:

"We do not believe the judicial constitutional rule declared in *Pearce* should be applied under the circumstances of our present case where the enhanced sentence comes as a result of a trial *de novo* to which the defendant is entitled regardless of lack of error or the nature of his plea in the lower court. Under the two-tier system of adjudicating certain criminal cases in Kansas the defendant may on conviction appeal from any sentence received in a city court as a matter of right and regardless of procedural or substantive error. In such case he then receives an entire new trial in the second tier court, which is a court of general criminal jurisdiction presided over by an experienced trial judge. The appeal which brings the case to the second tier court for a trial casts no reflection on the adjudicative processes of this second court which tries the case *de novo*, and the court is free to determine the sentence without the prejudices which might arise had there been a previously aborted adjudication in that same court." 231 Kan. at 234-35.

Justice Fromme affirmed the sentence imposed by the district court, stating:

"The judicial constitutional rule regarding enhanced penalties as declared in *North Carolina v. Pearce*, supra, does not apply in Kansas when the enhanced penalty complained of is imposed by a district court acting in accordance with our statutes to provide a two-tiered system of administering criminal justice in certain minor cases. The Kansas two-tier system of administering criminal justice, whereby one convicted in an inferior court has an absolute right to a trial *de novo* in a court of general criminal jurisdiction, is not violative of due process as penalizing an accused for seeking a new trial merely because an enhanced penalty is imposed after a trial *de novo*." 213 Kan. at 236.

We conclude *Pearce* is not applicable to the circumstances here. Further, a careful review of the record reveals the district court imposed sentence completely independently of the sentence imposed by the district magistrate judge. The record does not support defendant's contention that he received a greater sentence just because he sought *de novo* review of his conviction and sentence.

Defendant's contention that the district court erred in the sentence imposed by failing to consider K.S.A. 21-4601 and K.S.A. 21-4606 likewise fails. In *State v. Doile*, 244 Kan. 493, 503-04, 769 P.2d 666 (1989), our Supreme Court stated:

"A sentence imposed by a trial court will not be disturbed on the ground it is excessive, provided it is within the limits prescribed by law and within the realm of discretion on the part of the trial court, and the sentence is not the result of partiality, prejudice, oppression, or corrupt motive. [Citations omitted.]"

"An abuse of discretion is shown only where no reasonable person would take the view adopted by the court." *State v. Grimsley*, 15 Kan. App. 2d 441, 445, 808 P.2d 1387 (1991). "It is the sentencing judge alone who determines the appropriate sentence or other disposition in each case, not the appellate judges." *State v. Heywood*, 245 Kan. 615, 617, 783 P.2d 890 (1989).

The sentence imposed for defendant's first conviction of driving while suspended was within the statutory limits, but did exceed the minimum. See K.S.A. 8-262(a)(1) and (3); K.S.A. 1992 Supp. 21-4502(1)(b).

Justice Six, in *State v. McDonald*, 250 Kan. 73, 82-83, 824 P.2d 941 (1992), stated:

"K.S.A. 21-4606(2) sets forth seven factors which, while not controlling, are to be considered by the court in fixing the minimum term of imprisonment which is consistent with the public safety, the needs of the defendant, and the seriousness of the defendant's crime. When the sentence exceeds the minimum, it is the better practice for the sentencing court to place a detailed statement of facts and factors it considered on the record. Failure to do so does not necessarily indicate the sentencing court abused its discretion. Each case is to be considered on its facts."

We conclude the district court did not err by failing to expressly consider on the record the sentencing objectives in K.S.A. 21-4601 and the sentencing factors in K.S.A. 21-4606. We further conclude the sentence imposed was well within the district court's discretion.

During sentencing, after reviewing defendant's driving record, the district court stated defendant had a prior DUI conviction and an administrative suspension for testing .10 or above on an alcohol concentration test. The district court felt defendant had

not learned his lesson from the penalties imposed for his prior offenses and did not take the laws of Kansas seriously. The district court noted defendant had not appeared for trial but was in Colorado, and the court wanted to be sure defendant came back to Kansas to serve his sentence and pay his fines and court costs.

Defendant has not shown the district court abused its discretion in the sentence imposed. Reasonable persons could agree with the district court.

Affirmed.