[No. 13700-7-III.  Division Three.  June 15, 1995.]

THE STATE OF WASHINGTON, *Respondent*, v. JAMES ERIK OLSSON, *Appellant*.

*Mark C. Prothero*, for appellant.

*Ronald B. Shepherd, Prosecuting Attorney*, for respondent.

THOMPSON, C.J. — James E. Olsson appeals his conviction for possession of a controlled substance. He contends the court erred when it denied his motion to suppress the cocaine a deputy sheriff seized from him after stopping his vehicle for a defective exhaust. He argues RCW 46.37.390, which requires motor vehicles to be equipped with a muffler which is sufficient "to prevent excessive or unusual noise", is unconstitutionally vague. We affirm.

On March 15, 1992, Lincoln County Sheriff's Deputy Kelly Hembach was parked by the side of the road on Highway 28 when Mr. Olsson drove by in his black Camaro. Deputy Hembach heard "excessively loud noise" emanating from the Camaro's vehicle exhaust, a violation of RCW 46.37.390. He stated he is familiar with the vehicle type and could tell the noise was more than would have come from an unaltered factory vehicle. The officer also observed the Camaro's muffler and the exhaust system appeared to have less clearance in relation to the roadway than is required by RCW 46.61.680.[1] He therefore stopped Mr. Olsson for the vehicle's excessive noise and for the equipment violation.

Upon being stopped, Mr. Olsson told Deputy Hembach he was carrying a knife. He produced the knife and gave it to the deputy. Deputy Hembach stated Mr. Olsson appeared to have "a heightened awareness to his surroundings. His pupils would not react and were fixed at mid-range. He had glassy eyes with redness around the membrane". Deputy Hembach suspected Mr. Olsson was

---

[1]RCW 46.61.680 states:

"It is unlawful to operate any passenger motor vehicle which has been modified from the original design so that any portion of such passenger vehicle other than the wheels has less clearance from the surface of a level roadway than the clearance between the roadway and the lowermost portion of any rim of any wheel the tire on which is in contact with such roadway".

under the influence of drugs. Then, during a pat-down search, he felt something in Mr. Olsson's pocket, which Mr. Olsson told him was another knife. While retrieving the "knife", Deputy Hembach found a substance later identified as cocaine. He arrested Mr. Olsson for driving a motor vehicle while under the influence of drugs and for possession of cocaine.

Mr. Olsson moved to suppress the evidence of cocaine on the basis the officer stopped and searched him without probable cause. The court denied the motion, concluding Deputy Hembach properly stopped Mr. Olsson's vehicle for violation of either RCW 46.37.390 or RCW 46.61.680. The court also concluded the deputy's subsequent pat-down of Mr. Olsson was appropriate, given his reasonable suspicion Mr. Olsson was under the influence of drugs and his reasonable concern Mr. Olsson was carrying another weapon. Mr. Olsson stipulated to the facts as to his possession of cocaine for purposes of trial. The court subsequently convicted him of possession of a controlled substance.

■ First, Mr. Olsson contends RCW 46.37.390 is unconstitutionally vague, and, therefore, provides an inadequate basis to justify a stop of his vehicle. Under RCW 46.37.390(1), "Every motor vehicle shall at all times be equipped with a muffler in good working order and in constant operation to prevent excessive or unusual noise . . .". Mr. Olsson argues the phrase "excessive or unusual noise" does not provide a standard to measure the amount of noise an exhaust system may emit and still comply with the statute. A statute is unconstitutional if it fails to define an offense so that ordinary people understand what it proscribes, or if it does not provide ascertainable standards to protect against arbitrary enforcement. *Spokane v. Douglass*, 115 Wn.2d 171, 178, 795 P.2d 693 (1990).

Other jurisdictions have upheld statutes similar to RCW 46.37.390(1) against challenges they are void for vagueness. *Smith v. Peterson*, 131 Cal. App. 2d 241, 280 P.2d 522, 49 A.L.R.2d 1194 (1955); *State v. Lara*, 18 Kan. App.

2d 386, 853 P.2d 1168 (1993); *People v. Byron*, 17 N.Y.2d 64, 215 N.E.2d 345, 268 N.Y.S.2d 24 (1966); *People v. Merry*, 12 Misc. 2d 20, 178 N.Y.S.2d 454 (1958); *State v. Beyer*, 441 N.W.2d 919 (N.D. 1989). *See also* L.I. Reiser, Annotation, *Public Regulation Requiring Mufflers or Similar Noise-Preventing Devices on Motor Vehicles, Aircrafts, or Boats*, 49 A.L.R.2d 1202 (1956).

These cases cite various rationales for their holdings. In *Beyer*, at 922, the court referenced the dictionary definitions of "unusual" and "excessive", and held:

> We believe that the usual noise emitted from a vehicle which is equipped with a proper muffler and exhaust system is within the common knowledge of drivers. When a vehicle is emitting noise which is inordinate, or beyond that which is proper or usual, the reasonable driver should be fully cognizant of the vehicle's condition and of the possible violation of the law by driving such a vehicle.

Similarly, *Smith*, held at page 249:

> Motor vehicles have been used so long and have become so common, and mufflers so uniformly used to minimize the noise from their exhaust that what is usual has become a matter of common knowledge, and anything in excess of that is excessive and unusual, and usually capable of ascertainment as such.

*Beyer*, at 922, also addressed the contention the statute did not provide standards to protect against arbitrary enforcement:

> The meaning of these adjectives is well within the common understanding of not only drivers, but also police officers. To adjudge excessive or unusual noise, officers must rely on their sense of hearing just as they must rely on their sense of sight for speeding violations or their sense of smell for DUI violations.

The court quoted *State v. Cobbs*, 411 So. 2d 212 (Fla. Dist. Ct. App. 1982):

> We see no greater potential for abuse in this case than in any case where an officer's visual observations of a vehicle's progress lead him to the founded suspicion that the driver of a ve-

hicle is committing a traffic offense. . .. So long as there exists a basis from which courts can determine that the stop was not arbitrary . . . the fact that the basis comes from an officer's testimony about what his senses revealed does not make the stop any less justified.

*Beyer*, at 922.

██ We agree with the foregoing opinions that what is loud and excessive noise for a vehicle is a matter of common knowledge and is as capable of ascertainment as other circumstances in which law enforcement officers must depend upon their senses to determine whether a violation of law has occurred. RCW 46.37.390 is not void for vagueness. The statute is specific enough that persons of reasonable understanding are not required to guess at its meaning.[2]

In addition, Mr. Olsson admitted that his exhaust system was louder than the muffler originally installed on the vehicle. In *Wahpeton v. Roles*, 524 N.W.2d 598, 600 (N.D. 1994), the court cited the fact Mr. Roles admitted his truck had a louder than normal exhaust in upholding a stop based upon a statute comparable to Washington's.

Second, Mr. Olsson asserts the court erred when it determined his vehicle did not comply with RCW 46.61.680, so as to justify the stop on an alternative basis. He cites Deputy Hembach's testimony the exhaust system was hanging below the rim of Mr. Olsson's vehicle. RCW 46.61.680 prohibits exhausts hanging lower than the rim of a *wheel*. Because we have already upheld the stop on the basis of the violation of RCW 46.37.390(1), we need not decide this issue. However, our review of Deputy Hembach's testimony, in context, indicates the exhaust system violated RCW 46.61.680.

Third, Mr. Olsson argues Deputy Hembach had neither a reasonable suspicion of criminal activity so as to justify detaining him, nor a reasonable concern for officer safety so as to justify searching him.

---

[2]Mr. Olsson cites an unpublished opinion as authority in support of his position. We will not consider an unpublished opinion for any purpose.

■ Under *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968), a law enforcement officer may stop a person if he has a reasonable suspicion the person is involved in criminal activity. The officer may also frisk the person for weapons, but "the scope of the frisk must be limited to the protective purpose". *State v. Collins*, 121 Wn.2d 168, 173, 847 P.2d 919 (1993). Here, the record supports a finding Deputy Hembach had specific facts leading him to believe Mr. Olsson was under the influence of drugs. He also had legitimate safety concerns which prompted his pat-down search of Mr. Olsson. As he testified at the suppression hearing:

> At that point in time I had told him that I needed to pat him down for officer safety reasons because myself and another deputy were present and there were two more people in the vehicle which posed a threat to myself and the other officer. At that point in time, since I had already taken one knife from him, I asked to pat him down.

The court did not err when it denied Mr. Olsson's motion to suppress.

Affirmed.

MUNSON and SWEENEY, JJ., concur.